**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| LANDIS FEW, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-949 (PTG/IDD) |
| | ) | |
| | ) | |
| JAMES WILLET, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OPINION**

In this action filed under 42 U.S.C. § 1983, *pro se* Plaintiff Landis Few ("Mr. Few") broadly alleges that officials at Pamunkey Regional Jail ("PRJ") recorded or monitored privileged conversations he had with his wife and attorney and deprived him of a defense in a then-pending criminal prosecution in state court by transmitting privileged information to state prosecutors. Dkt. 1. The matter is now before the Court upon a Motion for Summary Judgment (Dkt. 27) filed by Defendants PRJ, Lieutenant Jeffrey Bishop, Captain Ronnie Dorrity, and James Willet (collectively, "Defendants"). As explained in further depth below, Mr. Few filed a formal opposition to Defendants' Motion for Summary Judgment (Dkt. 33), thereafter requested and received discovery materials (*see* Dkts. 46, 48) and then filed a supplemental opposition, which he titled "Motion to Deny Defendants' Motion for Summary Judgment" (Dkts. 50, 51). Defendants have filed a Reply. Dkt. 52. This matter is fully briefed and ready for adjudication. For the reasons explained below, Defendants' Motion for Summary Judgment will be granted with respect to Mr. Few's federal constitutional claims, and the Court will decline to exercise supplemental jurisdiction over the single state law claim raised in the Complaint. The Court will deny Mr. Few's Motion in Opposition.

## I. Background

### A.    Procedural History

Mr. Few filed his Complaint on August 17, 2022, alleging, as stated above, that PRJ officials had impermissibly recorded or monitored his privileged telecommunications and, using the information they had gathered, deprived him of a defense in his state criminal proceedings. *See* Dkt. 1 at 3-4.  On October 27, 2022, the Court construed Mr. Few's "Motion to Amend Respondents" (Dkt. 6) as a motion for leave to amend the complaint and granted Mr. Few the requested leave. Dkt. 7.  On November 21, 2022, Mr. Few filed his First Amended Complaint (the "FAC"). Dkt. 9.  On May 3, 2023, the Court found the FAC to be "incomplete" in that it "failed to . . . nam[e] all relevant parties and contain[] all relevant factual allegations." Dkt. 17 at 1, 2. The Court thus declined to serve the FAC on Defendants but offered Mr. Few "a final opportunity to amend his pleadings" and provided clear instructions regarding the full scope of information any amended complaint should contain, including "the name of each and every person [Mr. Few sought] to include as a defendant," "a short statement of background facts describing the specific conduct of each defendant," and the dates and nature of the injuries Mr. Few received. *Id.* at 2–3.

On June 2, 2023, Mr. Few filed his Second Amended Complaint (the "SAC"), which suffered similar defects as its predecessor. Dkt. 18.  Specifically, it "consist[ed] only of generalized allegations that fail[ed] to describe the specific conduct of each named defendant." Dkt. 21. Accordingly, the Court declined to serve Defendants with the SAC and directed the United States Marshals Service ("USMS") to instead serve Defendants with the original Complaint (Dkt. 21 at 1–2), as it warned Mr. Few it would do if presented with a defective SAC (*see* Dkt. 17 at 3).

On November 1, 2023, Defendants filed a Motion for Summary Judgment, which addressed the claims raised in the original Complaint. Dkts. 27–28.  Mr. Few later filed an

2

opposition to that Motion and simultaneously filed what he styled as a "Motion to Compel and Amend" (the "Motion to Compel"). Dkts. 33, 36–37. In the Motion to Compel, Mr. Few requested documents he claimed Defendants had "omitted" from the summary judgment record, including text messages and phone records from his time at PRJ. *Id.* at 1–4. He claimed that the missing records, if produced, would demonstrate that two telephone numbers that should have been designated as restricted were not, and that the calls to or from those numbers therefore could have been improperly recorded or monitored. *Id.* at 4.

On September 6, 2024, the Court denied Defendants' Motion for Summary Judgment without prejudice on the basis that it addressed claims raised in the original Complaint rather than the more recently filed SAC. Dkt. 39. Defendants then filed (1) a Motion for Reconsideration, to remind the Court that the Complaint, not the SAC, was the operative pleading, and that the Court should reconsider its decision to deny the Motion for Summary Judgment (Dkt. 40); and (2) a Motion to Dismiss addressing the SAC (Dkt. 43). Mr. Few later submitted a Motion in Response. Dkt. 46.

On August 7, 2025, the Court granted Defendants' Motion for Reconsideration. Dkt. 48 at 3. The Court thus agreed to "revisit Defendants' Motion for Summary Judgment at a later date." *Id.* In the same Order, the Court directed Defendants to supply a trove of phone records Mr. Few had requested from them and "decline[d] to adjudicate the Motion for Summary Judgment until" they did so. *Id.* at 5.

On August 12, 2025, Defendants notified the Court that they had supplied Mr. Few with the records he had requested. Dkt. 49. Mr. Few then filed his Motion in Opposition (Dkts. 50, 51), in response to which Defendants filed a Reply (Dkt. 52).

**B.    The Complaint and the Scope of Mr. Few's Claims**

Before setting forth the statement of undisputed facts relevant to the Motion for Summary Judgment, the Court pauses to define the precise scope of the claims before it.  This is a necessary endeavor considering the vague and disorganized nature of the Complaint, which offers scattered and vague statements of the legal bases on which Mr. Few seeks relief.  Having carefully reviewed and considered the entire pleading, the Court identifies the following claims for relief:

| | |
|---|---|
| Claim One | Defendants violated Mr. Few's First Amendment right to access the courts by monitoring and/or recording his communications with his wife and Attorney Robert Windle. |
| Claim Two | Defendants violated Mr. Few's rights under the Fifth Amendment by monitoring and/or recording his communications with his wife and Attorney Robert Windle. |
| Claim Three | Defendants violated Mr. Few's rights under the Sixth Amendment by monitoring and/or recording his communications with his wife and Attorney Robert Windle. |
| Claim Four | Defendants violated Mr. Few's Fourteenth Amendment rights to due process and equal protection of the law by monitoring and/or recording his communications with his wife and Attorney Robert Windle. |
| Claim Five | Defendants encroached on communications protected by the attorney-client and spousal privileges. |
| Claim Six | Defendants intercepted Mr. Few's communications with his wife and Attorney Robert Windle, supporting a civil claim for damages under Va. Code § 19.2-69. |

*See* Dkt. 1 at 1–3.

C.    **Statement of Relevant, Undisputed Facts** [1]

Facing a "distribution" charge in the Hanover Circuit Court, Mr. Few was confined as a pretrial detainee at PRJ between September 23, 2021, and May 31, 2022. Dkt. 1 at 2, 4. Although Attorney Robert Windle initially served as Mr. Few's counsel, Mr. Few ultimately decided to represent himself at trial, relegating Mr. Windle to standby status. *See* Dkt. 1 at 4 ("[Mr. Few] is very passionate and deeply committed to defending himself against the pending criminal charges."); Dkt. 28-3 at 116 ("I'm representing myself in my upcoming trial on September 29. Mr. Windel [sic] is my 2nd chair. He follows my instructions."). Following a trial on June 3, 2022, a jury found Mr. Few guilty of at least one count of distribution of a controlled substance. *See* Virginia Judiciary Online Case Information System 2.0, eapps.courts.state.va.us/ocis/search (enter "Few, Landis" into field entitled "Enter a Name here"; click "Search"; click on case number CR21000835-01) (last accessed May 27, 2026).

While housed at PRJ awaiting his trial, Mr. Few—and indeed all inmates at the facility—relied on the services of Global Tel*Link Corporation d/b/a ViaPath Technologies to facilitate

---

[1] As will be discussed in more depth below, the Court needs only address one of the many arguments Defendants have raised in support of their Motion for Summary Judgment. *See* § IV, *infra*. Accordingly, in this section, the Court recounts only the facts relevant to the argument it affirmatively addresses—that Mr. Few's constitutional claims are without merit. Those facts derive primarily from the affidavits and records Defendants submitted in support of their Motion for Summary Judgment and in response to this Court's August 7, 2025 Order. *See* Dkts. 28, 49. Although Mr. Few has opposed the Motion for Summary Judgment, he has not abided by the Federal Rules of Civil Procedure or Local Civil Rule 56(B) in doing so. Indeed, rather than offering a compliant opposition to Defendants' proffered statement of undisputed facts, Mr. Few has offered scattershot arguments against the legal bases Defendants submit and cites only infrequently to the record to demonstrate the existence of disputes of fact. *See* Dkts. 32, 33, 50, 51. Mr. Few has not submitted affidavits or materials despite provision of ample notice that he was required to produce, or at least identify, admissible evidence to contest Defendants' Motion for Summary Judgment. *See* Dkt. 21 at 2 (the Court's direction that Mr. Few's opposition to Defendants' future dispositive motions "*must* include counter-affidavits . . . or other responsive material contesting the affidavits or records filed by the Defendants.") (emphasis added); Dkt. 27 at 2 (Defendants' notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975)).

telephone calls, video calls, and text messaging services to communicate with individuals outside of the jail, such as family members, friends, and attorneys. Dkt. 28-1 ¶ 6. As a default rule at PRJ, telephone and video calls to or from inmates are subject to monitoring and recording, and the parties to those calls are made aware of as much. *See* Dkt. 28-1 ¶ 8[2]; 28-1 ¶ 9[3]. Calls made to telephone numbers registered by attorneys, however, are *not* recorded or monitored. Dkt. 28-1 ¶ 10.[4] Consistent with this practice, "[n]o visitation calls between [Mr. Few] and his counsel were recorded."[5] *Id.* ¶ 12.

Since 2020, due to the COVID-19 pandemic, "inmates and their attorneys" use the PRJ's visitation area "only for professional visits." Dkt. 28-2 ¶ 4. Inmates and their attorneys

---

[2] "When an individual accepts a telephone call from an inmate at the [PRJ], the parties to the telephone call are advised, 'This call is from a correctional facility and is subject to monitoring and recording.'" Dkt. 28-1 ¶ 8.

[3] "Before commencing a video visitation with an inmate at the [PRJ], participants to the visit see a disclosure on screen that says, 'This video call may be monitored and recorded. It may be shared with law enforcement, and may be used as evidence in a criminal or civil proceeding.' Before the session can start, the friend or family member must click a button that says 'I agree' to the above disclosure. . . . Before commencing a video visitation, an inmate at the [PRJ] sees a disclosure on screen that says, 'This video call may be monitored and recorded. It may be shared with law enforcement, and may be used as evidence in a criminal or civil proceeding.' Before the session can start, the inmate must click a button that says, 'I agree.'" Dkt. 28-1 ¶ 9.

[4] "Once an attorney properly registers his or her telephone number with ViaPath (pursuant to the [PRJ] practice), calls made to that number will not be recorded. The system identifies those communications as 'restricted,' and the conversation is not recorded." Dkt. 28-1 ¶ 11.

[5] Mr. Few argues that the evidence the Court compelled Defendants to produce demonstrates that officials intercepted at least two text messages directed to Attorney Windle. *See* Dkt. 50 at 1–2. It does not appear that the two messages to Attorney Windle consisted of anything more than directions for Windle to contact Mr. Few. *See* Dkt. 49-D at 1 (showing Mr. Few transmitting messages stating, "I need to talk to you" and "Text me back if you receive this"). In any case, for the reasons set forth below, even assuming Mr. Few is correct that these two messages were "intercepted," there is no basis on which to find that Defendants violated his federal constitutional rights. Accordingly, facts related to these specific messages, which Defendants may or may not have read or monitored, are not material to the Court's conclusions in this Memorandum Opinion and are accordingly not included in this section.

communicate using telephones on each side of a glass divider, but, since "the visitation area was switched to facilitating only professional visits . . . , [PRJ] ceased recording and monitoring conversations made on [those] telephones." *Id.* ¶ 5.

Within seventy-two hours of an inmate's arrival at PRJ, "an officer reviews the [PRJ] Inmate Handbook with the [arriving] inmate." Dkt. 28-2 ¶ 7. The Inmate Handbook, which is available on the tablets provided to inmates (*id.*), contains the policies just discussed, stating that "[a]ll calls are collect and subject to being monitored and/or recorded." Dkt. 28-2 ¶ 8; Dkt. 28-2 at 17. The Handbook further provides that "nonprivileged messages sent from the inmate tablets are 'subject to screening, and any portions thereof may be reproduced.'" Dkt. 28-2 ¶ 8; Dkt. 28-2 at 23. Finally, the Handbook clarifies that "telephone calls placed from the inmate tablets 'are subject to the same rules as calls from phones in the unit.'" Dkt. 28-2 ¶ 8; Dkt. 28-2 at 24. On April 16, 2022, Mr. Few submitted an Inmate Grievance and certified that he "ha[d] read the Inmate Handbook." Dkt. 28-3 at 118.

## II. Standard of Review

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration in original) (quoting *Jacobs v. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015)). Once the moving party files a motion for summary judgment, the nonmoving party must "show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible

7

evidence[.]'" *Id.* (first alteration in original) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**B.      Section 1915(e)(2)(B) Standard**

Independent of Defendants' Motion for Summary Judgment, the Court is tasked under 28 U.S.C. § 1915(e)(2)(B) to dismiss this action if it determines the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can

8

choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Id.* (citation omitted). In other words, a plaintiff must state a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. U.S.*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

9

### III. Analysis

Defendants raise an array of arguments in support of their Motion for Summary Judgment, including that Mr. Few failed to exhaust administrative remedies before filing suit, that Defendants were not personally involved in any violation of Mr. Few's rights, that Defendants are entitled to judgment as to any claim raised against them in their official capacities, and that Mr. Few's constitutional claims are meritless. *See* Dkt. 28 at 9–30.

Defendants may well be entitled to judgment in their favor on all these bases, but the Court concludes that it need not address each argument to resolve the claims before it. Rather, because Mr. Few's federal constitutional claims are meritless, the Court will grant Defendants' Motion for Summary Judgment, in part, on that basis. With respect to Mr. Few's single state law claim, the Court will decline to exercise supplemental jurisdiction and dismiss that claim without prejudice.

### A.      Federal Constitutional Claims

#### 1.      Claim One – First Amendment

In Claim One, Mr. Few asserts that Defendants violated his First Amendment right of access to the courts by recording and/or monitoring his privileged communications and disseminating those communications to the Commonwealth Attorney, who, as a result, "gain[ed] the upper hand in court proceedings." Dkt. 1 at 6.

To prevail as to a First Amendment access to courts claim, a plaintiff must demonstrate that a state official has frustrated or impeded his prosecution of a nonfrivolous legal claim and caused him "actual injury." *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). A plaintiff suffers an "actual injury" when he faces "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

10

Here, Mr. Few has provided no evidence regarding his state criminal proceedings or that Defendants truly disseminated any information to the participating prosecutors, let alone what that information was or how it caused Mr. Few an "actual injury." Accordingly, Defendants are owed judgment in their favor. *See Brown v. Dep't of Pub. Safety and Corr. Servs.*, 383 F. Supp. 3d 519, 543 (D. Md. 2019) ("As Plaintiffs have failed to raise evidence of actual injury and this Court cannot presume that they suffered one, there is no genuine issue of material fact to present to a jury.").[6]

### 2.    Claim Two – Fifth Amendment

The Court next addresses—and dispenses with—Mr. Few's claim for relief under the Fifth Amendment. The Fifth Amendment protects against the actions of the federal government. *See Cole v. Pepper*, 2019 WL 4750295, at *6 (D. Md. Sept. 30, 2019). Here, where Defendants are state, not federal, actors, the Fourteenth Amendment governs Mr. Few's due process and equal protection claims. *See Massey v. Ojaniit*, 759 F.3d 343, 354 n.5 (4th Cir. 2014) (holding that where a complaint "asserts claims against state, rather than federal, actors," the plaintiff's "relevant due process protections are found in the Fourteenth, rather than the Fifth, Amendment"); *U.S. v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (observing that "the Fourteenth Amendment's Due

---

[6] The Court finds, in the alternative, that the Complaint fails to state an access to courts claim based on its failure to identify the nature of Mr. Few's criminal charges, the information that Defendants allegedly transmitted to the Commonwealth Attorney, the relevance of that information to the state court proceedings, and the injury Mr. Few suffered as a result of the information's transmission. *See Sirleaf v. Clarke*, No. 3:18cv311, 2020 WL 1269787, at *14 (E.D. Va. Mar. 16, 2020) ("To state a claim of denial of access to the courts, a plaintiff must identify with specificity an actual injury to nonfrivolous litigation." (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996))); 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case *at any time* if [it] determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.") (emphasis added).

Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment").

To the extent Mr. Few seeks relief under a different provision of the Fifth Amendment—such as the Self-Incrimination Clause—he has failed to articulate that claim with any clarity and has done even less to demonstrate that Defendants are not entitled to judgment in their favor on that claim. The Self-Incrimination Clause provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To establish a violation of the Self-Incrimination clause, plaintiffs must produce evidence that they were "compelled" to incriminate themselves by defendants. *See McKune v. Lile*, 536 U.S. 24, 35-37 (2002).

Here, there is no evidence to support a finding that Defendants "compelled" Mr. Few to make any self-incriminating statements. Rather, as discussed throughout this opinion, any statements that Mr. Few may have made on the phone with his wife were made voluntarily after a host of warnings that his conversations could be monitored. In any case, Mr. Few does not even describe what information he claims the government used against him at his criminal trial. There is therefore no record evidence to support a finding in Mr. Few's favor as to any self-incrimination claim. Accordingly, Defendants' Motion for Summary Judgment will be granted as to Mr. Few's claims purportedly arising under the Fifth Amendment.[7]

### 3.    Claim Three – Sixth Amendment

In Claim Three, Mr. Few asserts that Defendants violated his rights under the Sixth Amendment, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In the eyes of both

---

[7] In the alternative, the Court dismisses this claim and any of its subclaims under 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants and the Court, Mr. Few has failed to identify the specific manner in which he believes Defendants violated his Sixth Amendment rights. It appears that Mr. Few most likely believes Defendants either (1) improperly elicited statements outside the presence of his attorney and used those statements against him in court or (2) interfered in his confidential relationship with his attorney.

Claims predicated on these facts are, in the abstract, cognizable under the Sixth Amendment. *See Fellers v. United States*, 540 U.S. 519, 523 (2004) (observing that the government violates the Sixth Amendment when its agents "deliberately elicit[]" an incriminating statement from a defendant in the absence of his counsel and later use that statement against him in criminal proceedings); *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." (quoting *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004))). But in reality, Mr. Few *represented himself* at his trial,[8] and he did not retain any right to outside counsel after deciding to do so. Indeed, although a criminal defendant like Mr. Few has both a constitutional right to counsel and a constitutional right to represent himself, those rights are "mutually exclusive." *U.S. v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014). And although courts may discretionarily appoint standby counsel—as it appears Mr. Few's trial court did—Supreme Court precedent does not require or authorize "hybrid" representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). In other words, Mr. Few, acting as his own counsel, cannot have been denied assistance of counsel.

---

[8] *See* Dkt. 1 at 4 ("[Mr. Few] is very passionate and deeply committed to defending himself against the pending criminal charges."); Dkt 28-3 at 116 ("I'm representing myself in my upcoming trial on September 29. Mr. Windel [sic] is my 2nd chair. He follows my instructions.").

13

Even to the extent Mr. Few did not extinguish his right to counsel by electing to represent himself, Defendants are entitled to judgment as to Claim Three. First, the record does not contain any indication that Defendants elicited or coerced any incriminating statements from Mr. Few outside the presence of his counsel. The only conversations from which any such statements could have arisen were those Mr. Few had with his wife, but it is not alleged that Defendants were parties to those calls, and they therefore could not have elicited any statements during them. Rather, even to the extent Mr. Few made incriminating statements to his wife, either Mr. Few, his wife, or each of the two consented to the possible recording of their conversations, and thus offered their statements "freely and voluntarily," curing any possible Sixth Amendment violation.[9] *See U.S. v. Lentz*, 419 F. Supp. 2d 820, 832–33 (E.D. Va. 2005).

For these reasons, no reasonable jury could consult the summary judgment record and find that Defendants violated Mr. Few's rights under the Sixth Amendment. Accordingly, Defendants' Motion for Summary Judgment will be granted as to Claim Three.[10]

### 4.   Claim Four – Fourteenth Amendment

In Claim Four, Mr. Few asserts that Defendants violated his rights under the Fourteenth Amendment by monitoring and/or recording his communications with his wife and Attorney Robert Windle. Without significant explanation, he argues that Defendants' actions violated his

---

[9] The Court reiterates that, even if Mr. Few's statements *were* involuntarily elicited and *were* used against him, he has not identified the nature of those statements, let alone explained what prejudicial effect their introduction had on his criminal proceedings.

[10] The Court finds in the alternative, under 28 U.S.C. § 1915(e)(2)(B)(ii), that Mr. Few has failed to state a claim for relief under the Sixth Amendment given the lack of allegations explaining the nature of the statements used against him and the effect of their introduction in his state criminal proceedings. *See Nordstrom*, 762 F.3d at 910 (opining that "deliberate[] interfere[nce] with the confidential relationship between a criminal defendant and defense counsel . . . violates the Sixth Amendment right to counsel *if it substantially prejudices the criminal defendant*") (emphasis added) (quoting *Williams*, 384 F.3d at 584–85).

14

rights to both due process and equal protection of the law. *See* Dkt. 1 at 3. He is not entitled to relief under either theory.

### a.    Due Process

The Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. But this provision "guarantees more than fair process." *Wash. v. Glucksberg*, 521 U.S. 702, 719 (1997). Indeed, it "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In other words, there are two types of due process claims: substantive and procedural. *See Desper v. Clarke*, 1 F.4th 236, 246 (4th Cir. 2021). It is not clear which variety of claim Mr. Few seeks to raise, and the Court thus addresses both.

### i.    Substantive Due Process

First, to the extent that Mr. Few seeks to raise such a claim, he has failed to show why that claim should proceed under the Fourteenth Amendment rather than the First, Fifth, or Sixth Amendments, which are "more-specific-provision[s]" governing the claims. *See Cnty. of Sacramento*, 523 U.S. at 844. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted). Because the First, Fifth, or Sixth Amendments are clearly more specific sources of constitutional protection

relevant to Mr. Few's non-due-process-oriented claims,[11] Defendants are owed judgment in their favor as to any substantive due process claim Mr. Few seeks to raise.

### ii.    Procedural Due Process

Any procedural due process claim Mr. Few seeks to pursue is equally meritless. To prevail as to such a claim, "a plaintiff must [first] identify a protected liberty or property interest and [then] demonstrate deprivation of that interest without due process of law." *Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017) (alteration in original) (quoting *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015)). "An inmate who fails to satisfy these two requirements cannot invoke the procedural protections of the Due Process Clause." *Id.* (quotation marks omitted) (quoting *Prieto*, 780 F.3d at 248).

Here, at the outset, Mr. Few has not identified the liberty or property interest he claims to have been denied. Accordingly, his claim fails at the first hurdle. *See Martin*, 858 F.3d at 253. It seems most probable that Mr. Few believes Defendants infringed on his interest in avoiding imprisonment by informing prosecutors as to the content of his phone calls, something he claims gave the Commonwealth "the upper hand" in his criminal proceedings. *See* Dkt. 1 at 6. But as discussed above in the context of Mr. Few's access to courts claim, the record is bereft of any evidence regarding the nature of the information allegedly transmitted to state prosecutors. *See* § III.A.1, *supra*. To compound this issue, Mr. Few does not assert that he was unable to challenge the introduction of any evidence at his state criminal proceedings. Accordingly, there is no

---

[11] Mr. Few alleged violations of his Fifth Amendment rights in the Complaint. *See* Dkt. 1 at 2–3. To the extent Mr. Few seeks relief via the Fifth Amendment under a substantive due process theory, he may not do so, because the Fourteenth Amendment's Due Process Clause is the operative source of law when it comes to questions of state, rather than federal, action. *See* § III.A.2, *supra*. As just discussed, however, Mr. Few's substantive due process claim under the Fourteenth Amendment is equally toothless because more specific provisions of the Constitution apply to Mr. Few's non-due-process claims, which all arise under specific constitutional amendments.

evidence to support a finding that Defendants infringed on Mr. Few's liberty interests or that he was not afforded legally sufficient process as to any such deprivation. No reasonable jury could consult this record and find that Defendants violated Mr. Few's rights, and Defendants are therefore entitled to judgment in their favor as to Mr. Few's procedural due process claim.[12]

### b.      Equal Protection

Mr. Few's equal protection claim is also meritless. The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Typically, equal protection claims involve allegations that defendants "treated [a plaintiff] differently because he is a member of a suspect class or because he exercised a fundamental right." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). Mr. Few does not apparently make such a contention. Accordingly, it is conceivable that he seeks to raise his claim under a "class-of-one" theory by showing that he was "'intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment.'" *Id.* at 337–38 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, regardless of the theory under which Mr. Few proceeds, Defendants are entitled to judgment in their favor because, even assuming for the sake of argument that some of Mr. Few's

---

[12] The Court finds in the alternative, under 28 U.S.C. § 1915(e)(2)(B)(ii), that Mr. Few has failed to state a claim under a procedural due process theory based on his failure to affirmatively identify the liberty or property interest at issue or the manner in which Defendants owed, but denied him, legal process.

communications were monitored or recorded, there is no record evidence that Defendants treated any other inmate in a different manner. Rather, the policies and practices regarding the monitoring of telecommunications that applied to Mr. Few applied equally to every inmate at PRJ, as set forth in the Inmate Handbook. Accordingly, Defendants are entitled to judgment in their favor as to Mr. Few's equal protection claim.[13]

**B.      Claim Five – Attorney-Client and Spousal Privilege**

In Claim Five, Mr. Few asserts that Defendants violated his rights by monitoring or recording privileged conversations with his wife and attorney. It is unclear whether Mr. Few believes alleged violations of attorney-client and spousal privilege to amount to standalone claims for relief, but to the extent he does hold such a belief, his position lacks support, for these privileges are merely "evidentiary principle[s] and legal concept[s] related to preventing the disclosure of communications made between privileged persons in confidence." *Butcher v. Haney*, 2020 WL 3013284, at *1 (E.D. Ky. June 4, 2020). Although communications protected by these privileges may relate to constitutional claims under, for example, the First and Sixth Amendments, violations of those privileges do not themselves provide any basis for relief. *See id.* at *1–2 ("[T]he attorney-client privilege is not a standalone legal claim that a *pro se* prisoner plaintiff can assert against a defendant prison official . . . . That said, [Plaintiff's] complaint could be broadly construed as asserting a *constitutional* claim related to the alleged [violations]."). Accordingly, to the extent Mr. Few raised or sought to raise any abstract and independent claim based on alleged violations

---

[13] The Court finds in the alternative, under 28 U.S.C. § 1915(e)(2)(B)(ii), that Mr. Few has failed to state an equal protection claim based on his failure to allege differential treatment from similarly situated individuals.

of his attorney-client or spousal privileges, Defendants are entitled to judgment in their favor as to any such claims.[14]

### C.     Qualified Immunity

Because the Court finds that Defendants did not violate Mr. Few's constitutional rights, Defendants are entitled to qualified immunity on that basis. *See Est. of Jones ex rel. Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) ("To determine whether qualified immunity applies, we conduct a two-step inquiry, in either order: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation.") (citation omitted). *See also Rose v. Higgs*, No. 2:16cv479, 2018 WL 3301647, at *13 n.6 (E.D. Va. July 5, 2018) ("Because the Court concludes that Defendants' actions did not violate the Fourteenth Amendment—the first prong of the qualified immunity analysis—the Court need not consider the second prong of the qualified immunity analysis." (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 243–45 (2009))).

### D.     Claim Six – State Law Claim

Finally, as observed above, Mr. Few repeatedly invokes Title 19.2, Chapter 6 of the Virginia Code throughout his submissions. *See, e.g.*, Dkt. 1 at 3; Dkt. 33 at 9–10. A section of this chapter permits plaintiffs to initiate civil actions for interceptions of their communications, *see* Va. Code. Ann. § 19.2-69 (2026), which Mr. Few alleges Defendants repeatedly did. The Court could hear this claim only by exercising supplemental jurisdiction, which allows federal courts to consider state law claims raised alongside federal claims.[15] *See* 28 U.S.C. § 1367. Federal courts are not

---

[14] The Court finds in the alternative, under 28 U.S.C. § 1915(e)(2)(B)(ii), that Mr. Few has failed to state any claim for relief regarding alleged intrusions upon his privileged communications.

[15] Federal courts may also exercise diversity jurisdiction over a plaintiff's claims arising under state law, but this Court may not so act under the present circumstances, for Mr. Few and

19

*required*, however, to do so. Rather, they have "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise supplemental jurisdiction, courts look at "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation—*e.g.*, at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (internal quotation marks omitted) (affirming district court's decision to grant summary judgment to defendants on only remaining federal claim and its subsequent decision not to exercise supplemental jurisdiction over remaining state law claim).

Here, the *Shanaghan* factors militate dismissal without prejudice of Mr. Few's state law claim. First, this claim presents questions of state, not federal, law. Second, as to fairness, the limitation period for filing this claim was tolled from the time of the filing of the Complaint and will remain tolled until thirty days following the dismissal of this action, *see* 28 U.S.C. § 1367, meaning Mr. Few will not be deprived of an opportunity to further pursue this claim in state court. Finally, dismissal of this claim promotes judicial economy, as this Court will not be required to expend further resources addressing it, allowing instead a state court well versed in issues of state law to consider its merits. Accordingly, the Court will decline to exercise supplemental jurisdiction over Mr. Few's state law claim and will dismiss it without prejudice.

---

Defendants are all citizens of the Commonwealth of Virginia, meaning there is not complete diversity of parties as required under the relevant statute. *See* 28 U.S.C. § 1332.

20

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be GRANTED

IN PART AND DENIED IN PART.  The Court will enter judgment in Defendants' favor as to

Mr. Few's federal constitutional claim and dismiss without prejudice Mr. Few's claim arising under

state law.


Entered this ___9th___ day of June, 2026.
Alexandria, Virginia

_____
Patricia Tolliver Giles
United States District Judge